**STATE of Minnesota, Appellant,**

v.

**Ted BROWN, Respondent.**

No. A05–1793.

Court of Appeals of Minnesota.

Feb. 14, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Jan Kolb, Mille Lacs County Attorney, Christopher J. Zipko, Assistant County Attorney, Milaca, MN, for appellant.

Steven J. Meshbesher, Meshbesher & Associates, P.A., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; WRIGHT, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

In this pretrial appeal, the state challenges a district court order allowing re-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

spondent Ted Brown to plead guilty to the lesser offense of fourth-degree criminal sexual conduct and dismissing the indictment charging respondent with first- and third-degree criminal sexual conduct. Because the court clearly erred in enforcing an executory plea agreement, we reverse and remand for further proceedings.

## FACTS

Respondent is charged with a sexual assault that occurred in the early morning hours of February 2, 2003, at a resort in Onamia. The grand jury indicted respondent on charges of first- and third-degree criminal sexual conduct. Early in 2005, trial was set for September 26, a motion hearing was scheduled for August 25, and a court order directed that plea negotiations should be concluded at least 30 days before trial.

At the beginning of August 2005, the state discovered a scheduling conflict that would make Wade Kish, the special prosecutor handling the case, unavailable for the September 26 trial date. Defense counsel Steven Meshbesher objected to a continuance of the trial date, citing the length of time the case had been pending.

On August 25, a day or two before the plea negotiation deadline, the parties assembled for the previously scheduled motion hearing. The matter apparently never went on the record. The court clerk's notes for the day state: "inchamber conf[erence]—w[ith] att[orne]ys [—] no record made—further discussions w[ith] victim—Advise c[ou]rt 8/26."

According to the district court's memorandum filed a week later, a discussion on scheduling occurred in chambers; the court informed the parties it was "leaning" toward denial of continuance and asked the parties to discuss possible settlement. After

essentially an afternoon of discussion outside of the court's presence, [an agreement was presented and t]he court expressed its willingness to accept those terms. There was discussion regarding taking the defendant's plea on the record and prosecutor Kish requested that the plea be delayed as he had not yet notified the victim about the terms of the settlement and wished to do so before the plea was entered.

Kish later stated that he contacted the victim on August 26, the day after the agreement, and she opposed the proposed plea agreement. Kish notified Meshbesher the same day. On August 31, Assistant Mille Lacs County Attorney Chris Zipko called the clerk's office informing them that the matter had not settled. Zipko added that he would be taking over the case and that he would appear the following day, September 1, for a motion hearing.

On September 1, the district court summarized what had occurred on August 25, concluding that there was "an agreement in this matter that would entail a stay of adjudication for a period of zero to five years to a plea of 4th Degree Criminal Sexual Conduct." The court acknowledged learning that the victim was opposed to the settlement and that the state had withdrawn its offer, but the court stated it had "indicated to counsel in chambers my understanding is that an offer was made and has been accepted."

Kish stated that he thought he had made it "abundantly clear to both the Court and Mr. Meshbesher" in the earlier discussion that the agreement "was not to be considered an official offer as we wanted to run it by the victim before we actual-

Minn. Const. art. VI, § 10.

ly extended the official offer, that we were going to do that right away that day." Kish stated that they agreed to wait, and he contacted the victim the next day.

Kish agreed with the district court's recollection that there had been discussion about respondent getting a psychosexual evaluation done and about his entering the guilty plea that day (August 25), but that Kish had requested they hold off until the victim was notified. Meshbesher asserted that there had been "an official offer made and an official acceptance made." Meshbesher added that he had contacted a psychologist to conduct the psychosexual examination and that respondent was prepared to pay the $1,500 fee for the evaluation. After Kish called to withdraw from the agreement, Meshbesher stated that "[his] client because of his financial circumstances put it on hold."

The district court pointed out the prosecution's request to continue the trial date due to Kish's scheduling conflict and stated that the prosecution's withdrawal of its plea offer "creates a situation where a continuance is granted de facto...." The court then ruled that a plea offer had been made by the prosecution and accepted by the defense.

The court proceeded to take an *Alford* plea from respondent. At the conclusion of the plea, the court stayed setting a sentencing hearing pending a pretrial appeal by the state. The court later granted respondent's motion to supplement the record for appeal, following a hearing on October 27.

## ISSUES

1. Did the district court err in enforcing the plea agreement after the prosecution withdrew from it when the court had not yet accepted the plea?

2. Was there a manifest injustice justifying the district court in accepting respondent's plea to a lesser offense over the prosecutor's objection?

## ANALYSIS

■ To prevail in a pretrial appeal, the state must show clearly and unequivocally that the district court erred and that it's ruling, unless reversed, will have a critical impact on the outcome of the prosecution. *State v. Jones*, 518 N.W.2d 67, 69 (Minn. App.1994), *review denied* (Minn. July 27, 1994). Here, the reduction of the charge from first-degree to fourth-degree criminal sexual conduct, along with the stay of adjudication and other favorable terms of the plea, critically impact the prosecution.

■ Interpretation of the rules of criminal procedure is a question of law, which this court reviews de novo. *State v. Whitley*, 649 N.W.2d 180, 183 (Minn.App. 2002). Interpretation of plea agreements is also a question of law subject to de novo review. *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn.2004). The district court's factual findings, however, are subject to a clearly erroneous standard of review. *State v. Critt*, 554 N.W.2d 93, 95 (Minn. App.1996), *review denied* (Minn. Nov. 20, 1996).

### 1.

■ The state argues that it had a right to withdraw from the plea agreement when it was merely executory in nature, before a plea had been entered on the record, unless respondent could demonstrate detrimental reliance or prejudice. *See State v. Johnson*, 617 N.W.2d 440, 443 (Minn.App.2000).

In *Johnson*, this court affirmed the denial of a motion for specific enforcement of a plea agreement. *Id.* at 443. According to defense counsel, the prosecutor obtained the county attorney's approval of a plea

agreement, and the deal was "an official offer on the table." *Id.* at 442. Based on a later reassessment of the strength of the state's evidence, the prosecutor withdrew the plea offer. *Id.* This court held "that the state may withdraw from a plea agreement at any time before a defendant enters a guilty plea and the trial court accepts the plea, unless the defendant has detrimentally relied upon the agreement." *Id.* at 443; *see* 5 Wayne R. LaFave, et al., *Criminal Procedure* § 21.2, at 96 (2d ed.1999) (describing this as the "prevailing doctrine").

Several undisputed facts establish, under *Johnson,* that the plea agreement was merely executory: (1) it was agreed that the prosecutor was going to discuss the plea agreement with the victim; (2) the district court did not accept a guilty plea from respondent on August 25; and (3) respondent was going to arrange a psychosexual examination before the plea was entered. In these circumstances, *Johnson* establishes that the state was entitled to withdraw the plea offer unless respondent had detrimentally relied on it. And *Johnson's* clear holding makes it unnecessary to determine whether the offer was considered "official," whether it was conditioned on the approval of the victim, or whether there was a handshake to seal a "gentleman's agreement." Although respondent argues the agreement was not "executory" because the district court found there was a formal and unconditional offer and acceptance, those findings are irrelevant under *Johnson* and under the prevailing doctrine from other jurisdictions. *Id.* at 442–43.

Respondent argues that he detrimentally relied on the plea agreement, or at least

should have the opportunity to present evidence of detrimental reliance. But respondent has not suggested any act taken in reliance on the agreement that would establish detrimental reliance. (Respondent's counsel conceded in the district court that the arrangements for the psychosexual evaluation, to be paid for by respondent, were cancelled when the state withdrew from the agreement.) Respondent argues that he would have been prejudiced by the "de facto continuance" sought by the state. But, since the district court accepted his plea more than three weeks before the September 26 trial date, there was no "de facto continuance." And respondent does not suggest exactly how such a continuance would have prejudiced him.

On the undisputed facts of this case, *Johnson* requires reversal of the district court's order. Even if *Johnson* could be read narrowly to only permit prosecutors to withdraw plea offers in good faith, the victim's opposition to the agreement in this case constitutes a more substantial basis for withdrawal than the prosecutor's second thoughts in *Johnson.*

### 2.

■ Respondent argues that the district court properly permitted him to plead guilty to a lesser offense over the state's objection because allowing the plea was necessary to avoid a manifest injustice.[1] The court may accept a plea of guilty to a lesser offense if the court is satisfied "that the prosecution cannot introduce evidence sufficient to justify the submission of the offense charged to the jury or that it would be a manifest injustice not to accept the plea." Minn. R.Crim. P. 15.07.[2] This

---

1. Although respondent did not present this issue to the district court, we address it because it has been thoroughly briefed on appeal and the record is adequate to decide it.

2. The decision to accept a plea to a lesser offense over the prosecutor's objection may violate the separation of powers. *See State v. Streiff,* 673 N.W.2d 831, 834 (Minn.2004) (noting that the history of Minn. R.Crim. P.

court has held that the "manifest injustice" warranting acceptance of a plea to a lesser offense could refer "to situations like a dishonored plea bargain, or to prosecutorial decisions based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *State v. Favre*, 428 N.W.2d 828, 831 (Minn.App.1988) (quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985)).

Respondent argues that the prosecutor here committed an "abuse of process" in manipulating the plea negotiations to obtain a de facto continuance of trial, and that this constitutes a "manifest injustice." But respondent cites no authority holding that "abuse of process" by the prosecutor, such as respondent alleges here, constitutes "manifest injustice" equivalent to a prosecution impermissibly based on race, religion, or other arbitrary classification. Moreover, there is no factual support for respondent's claim.

The prosecution made repeated attempts in the weeks before the August 25 hearing to obtain a continuance of the September 26 trial date. The prospect that a continuance would be denied, in accord with the announced "leaning" of the district court, may have motivated the prosecution to make a favorable plea offer. But there is nothing in the record to dispute the prosecutor's asserted reason for withdrawing from the plea agreement, namely, that the victim opposed it. It is undisputed that all parties knew that Kish was going to notify the victim, and that that was the reason for deferring entry of the plea. Neither the district court nor respondent on appeal has suggested any basis for believing that the prosecutor anticipated the victim would oppose the agreement.

Moreover, the record contradicts any suggestion that the prosecutor withdrew the state's offer to get a "de facto" continuance. Perhaps the strongest evidence against the theory of "abuse of process" is that, after the state withdrew from the plea agreement, it reassigned the case from Kish to Zipko. If the state had engineered the plea agreement to avoid Kish's scheduling conflict, it would not have immediately reassigned the case to another attorney when the trial date had not changed.

Although respondent's abuse-of-process argument is aimed at the trial continuance issue, we also address the fact that *Favre* introduces the prospect of accepting a plea based on the "manifest injustice" of a "dishonored plea bargain." That term was not explained in *Favre* and no authority was cited for construing it as a "manifest injustice." 428 N.W.2d at 831. But if the term extends to a withdrawn plea offer, or at least to any withdrawal of a plea offer, it would conflict with *Johnson*, which allows prosecutorial withdrawals from "executory" plea agreements.

The Minnesota Supreme Court's decision in *State v. Streiff*, 673 N.W.2d 831, 835 n. 3 (Minn.2004), suggests that the roots for *Favre*'s dishonored-plea reference are in an unpublished opinion of this court, an opinion that does not deal with a withdrawn offer. The term "dishonored plea bargain" had not been used in a reported Minnesota decision before *Favre*. *Cf. State v. Anderson*, 520 N.W.2d 184, 187–88 (Minn.App.1994) (addressing whether restitution order "dishonored" terms of plea agreement). There appears to be no authority holding that the state improperly "dishonors" a plea bargain by withdrawing from an executory plea agreement.

15.07 "demonstrates the state's separation of powers concerns").

LaFave, et al. distinguishes between "broken bargains," occurring after the guilty plea has been entered, and "withdrawn offers," occurring before the plea has been entered. LaFave, *supra.* The *Streiff* court indicated that at the plea-bargaining stage "discretion rests almost entirely with the prosecutor." 673 N.W.2d at 836. Although *Streiff* did not involve a withdrawn plea agreement, the *Streiff* court's analysis suggests that a district court would have no authority to enforce a plea agreement against the prosecution unless a plea had actually been entered. And that is what *Johnson* holds. 617 N.W.2d at 443. Harmonizing the holdings in *Johnson* and *Favre,* a "dishonored plea bargain" generally must be construed to refer to a plea agreement that has been violated after the plea was entered.

Even if we concluded that the term could be read more broadly, there would be no dishonored plea bargain in the facts of this case. The victim rights statute requires that prosecutors notify crime victims of proposed plea agreements and advise them of their right to object to a plea agreement or a proposed disposition. Minn.Stat. § 611A.03, subd. 1 (2004). Although the victim's opposition here did not obligate the prosecutor to scuttle the agreement, it provided a much stronger reason for withdrawing from the agreement than the prosecutor's second thoughts in *Johnson.* There was not a "manifest injustice" warranting acceptance of a plea to a lesser offense.

■ Because the district court erred in enforcing the plea agreement discussed on August 25, we need not address the state's argument that the court impermissibly interjected itself into the plea negotiations. In addition, because the state's argument is based on the district court's enforcement of the plea agreement, not its participation in the negotiations, this does not present a substantially different claim.[3]

**3.**

The remaining issues derive from motions filed by the parties and deferred to this panel.

The state moved to strike items that the district court admitted to supplement the record and the district court's September 2, 2005 memorandum. This court's record is limited to "the papers filed in the trial court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R.Crim. P. 28.02, subd. 8.

The district court admitted affidavits of Meshbesher, another attorney in his firm, and a defense investigator. These documents relate to what occurred in and outside the court chambers on August 25 during the plea negotiations. Because the district court has determined that the record should be supplemented by those affidavits, we deny the state's motion to strike them. We note that the documents are primarily relevant to the question of whether the district court impermissibly interjected itself into plea negotiations, an

**3.** We reject respondent's argument that this appeal must be dismissed or remanded for a further record. Appellant is responsible for ensuring that an adequate appellate record is presented to decide the issues raised by appellant. *State v. Anderson,* 351 N.W.2d 1, 2 (Minn.1984). As respondent points out, plea negotiations and discussions in chambers on August 25 occurred off the record, and later there was sharp disagreement among the parties as to whether the plea agreement was conditioned on the victim's approval. The state of the record would preclude our review of a claim premised on the district court's participation in negotiations. But there is a sufficient record to review the dispositive issue here, that is, the court's accepting, over the state's objection, a plea agreement that was still executory.

issue we have found unnecessary to resolve.

The newspaper article received by the district court does not purport to supplement the record as to what occurred in district court, and therefore it is not properly part of the record on appeal. The transcript of an unrelated Anoka County case, also received, is outside the record on appeal. The state's motion to strike these two documents and all discussion of them in respondent's brief is granted.

The district court's September 2 memorandum explaining the court's decision is properly included in the record on appeal because it is part of the court's ruling and does not involve new evidence. The state's motion to strike this document is denied.

Respondent filed a motion to submit supplemental briefing based on the documents accepted by the district court to supplement the record. Because we conclude that two of the documents are not properly part of the record on appeal and the other three do not relate to the issue that we have decided, we deny the motion for supplemental briefing.

Respondent filed a motion to strike portions of the state's brief discussing the facts of the alleged offense. Although respondent argues that these facts are not relevant to the issues on appeal, the facts are taken from documents that were filed in the district court and are a proper part of the record on appeal. *See* Minn. R.Crim. P. 28.02, subd. 9. Respondent's motion to strike is denied.

Finally, respondent filed a motion for an award of $6,000 in attorney fees plus $357.87 in costs. A respondent is entitled to reasonable attorney fees and costs in responding to a pretrial appeal filed by the state. Minn. R.Crim. P. 28.04, subd. 2(6). An award of $4,500 in attorney fees and $357.87 in costs is reasonable for responding to this appeal, and the prosecution shall pay attorney fees and costs in that amount to respondent.

## DECISION

The district court erred in enforcing the withdrawn plea agreement, which was still executory, and in accepting respondent's guilty plea to a lesser offense over the prosecutor's objection. The matter is remanded for further proceedings. The state's motion to strike is granted in part and denied in part. Respondent's motions on the record and on supplemental briefing are denied. But respondent is awarded $4,500 in attorney fees and $357.87 in costs for responding to this appeal.

**Reversed and remanded; motions granted in part and denied in part.**