**STATE of Minnesota, Respondent,**

v.

**Ralph Carl HAMACHER, Appellant.**

No. C8–93–1347.

Court of Appeals of Minnesota.

Jan. 25, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas D. Hayes, Sherburne County Atty., Nancy J. Logering, Asst. County Atty., Elk River, for respondent.

Joseph M. Paiement, Arnold & McDowell, Minneapolis, for appellant.

Considered and decided by AMUNDSON, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

This appeal is from a sentence imposed for first-degree criminal sexual conduct. Minn. Stat. § 609.342, subd. 1(g) (1992). The district court declined to order a stay, after hearing testimony at the sentencing hearing. *See* Minn.Stat. § 609.342, subd. 3. We affirm.

## FACTS

Appellant Ralph Hamacher pleaded guilty to first-degree criminal sexual conduct, admitting sexual penetration of his daughter, 15-year-old A.J.H. The plea agreement provided that Hamacher would receive a stayed sentence if it was in the best interest of "either the victim or the family unit" and if a professional assessment showed he could be successfully treated. An evaluation by the Central Minnesota Mental Health Center (CMMHC) showing him to be amenable to treatment had already been completed and was to be accepted by the court.

At the guilty plea hearing, Hamacher stated he understood the plea agreement. The agreement was restated, specifying that Hamacher had to meet the two statutory conditions set out in Minn.Stat. § 609.342, subd. 3, before he would receive a stayed sentence. Hamacher was told he would receive a prison sentence if either condition were not met. The question was asked whether he understood that if the court imposed a prison sentence it "would more than likely not allow you to withdraw your plea." Hamacher replied, "Yes."

A contested sentencing hearing was scheduled to determine whether the best interests of the family or the victim supported a stayed sentence. A number of witnesses testified, including two child protection workers familiar with the family, and the psychologist who had prepared the CMMHC evaluation. One of the social workers testified that the family was very angry, did not like the thought of being separated, and that the mother and two brothers had not said whether they believed A.J.H.'s allegations. The psychologist testified that a stayed sentence, with local jail time, would be in the family's best interest.

Hamacher's wife testified that she could not support the family on her income. She testified she was willing to go into counseling and work toward reuniting the family. Hamacher testified he was not angry at A.J.H., that he wanted her to come home and would tell her he was sorry.

A victim-witness advocate read to the court A.J.H.'s letter, which strongly urged committing Hamacher to prison. The advo-

cate commented that the letter was a "very powerful and moving statement," and emphasized A.J.H. wanted no contact with Hamacher but did want to return home. The advocate argued that a stayed sentence would send a bad message, returning the perpetrator to the home from which the victim had been removed. The social workers testified that A.J.H. did not want to come home if her father would be living there and that it would be difficult for her to return if her mother sided with him.

The court concluded it could not find that the best interests of the family would be served by a stayed sentence. Hamacher was sentenced to the presumptive executed term of 86 months.

## ISSUES

1. Is appellant entitled to withdraw his guilty plea?

2. Did the court abuse discretion in refusing to stay execution of sentence?

## DISCUSSION

### I

Hamacher's argument that he is entitled to withdraw his guilty plea is without merit.

■ A defendant is entitled to withdraw a guilty plea if the court rejects the agreement as to sentence. *State v. DeZeler*, 427 N.W.2d 231, 234 (Minn.1988). The defendant may also withdraw the plea if he can show he mistakenly believed he could withdraw the plea in the event the court rejected a recommendation as to sentence. *Id.*

■ The plea agreement as explained on the record at the guilty plea hearing did not promise Hamacher either a stayed sentence or a chance to withdraw his guilty plea if the sentence were executed. Hamacher was explicitly told, and stated he understood, the opposite—that he was taking a chance on going to prison, with no right to withdraw the plea if that was the court's decision. Although his written Rule 15 petition to plead guilty is more ambiguous, we cannot construe its language as altering the agreement plainly stated in the record. There was no deviation from the plea agreement and no

grounds for a mistake as to the terms of that agreement.

■ The district court's decision on whether to allow withdrawal of a guilty plea is reviewed under an abuse of discretion standard. *State v. Larkins*, 479 N.W.2d 69, 73 (Minn.App.1991). Hamacher's sentence was in accord with the plea agreement and therefore provides no basis for withdrawal of the guilty plea. *See generally State v. Tuttle*, 504 N.W.2d 252, 256–57 (Minn.App.1993). There was no abuse of discretion by the trial court in refusing his request.

### II

■ Hamacher contends that the district court abused discretion in denying him a stayed sentence under Minn.Stat. § 609.342, subd. 3 (1992). That statute provides, in pertinent part:

Except when imprisonment is required * * * the court may stay imposition or execution of the sentence if it finds that:

(a) a stay is in the best interest of the complainant or the family unit; and

(b) a professional assessment indicates that the offender has been accepted by and can respond to a treatment program.

*Id.*

In the district court, the issue arose whether the complainant is included within the "family unit" so that the "best interest" of both must be served by a stay. On appeal, the state raises an additional legal issue, arguing that mitigating circumstances must be present in addition to the two statutory conditions for a stay.

A determination that a stay was in the Hamacher family's best interest would have had to rely primarily on the economics of Hamacher's position as the primary breadwinner. The evidence revealed a substantial question whether the family could make its house payments without his income. A.J.H., however, made it clear she would not return to the house if Hamacher were living there. This appears to have posed an irreconcilable conflict between the family's total reunification and its economic survival.

There was no strong evidence of family healing that would have required a stay even if the family unit were interpreted to exclude the victim. Although Hamacher's wife was willing to go through counseling, she had not started such a program, and there was considerable evidence she remained angry at A.J.H. for reporting she had been sexually abused. A stayed sentence would have served the family only by allowing it to maintain an antagonistic attitude toward A.J.H. and to retain Hamacher's income.

The statute permits a stay if it is in the best interest of "the complainant or the family unit." Minn.Stat. § 609.342, subd. 3(a) (1992). The statute can be invoked whenever the sexual misconduct involves a complainant with whom the defendant has a "significant relationship." *Id.; see* Minn.Stat. § 609.342, subd. 1(g). A "significant relationship" extends beyond the immediate family and includes grandparents, uncles, and other close relatives. Minn.Stat. § 609.341, subd. 15 (1992). Thus, the legislature, in writing the stay provision, need not have assumed that the complainant was within the "family unit."

*Canons of construction* generally require that words separated by "or" have separate meanings. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). But there is no requirement that they have mutually exclusive meanings. *Cf. id.* (if terms did not have separate meanings, one would be redundant). "Complainant" and "family unit" have separate meanings. The legislature perhaps used the disjunctive "or" rather than the conjunctive "and" because there are cases in which the complainant is not part of the "family unit." There is no reason to interpret the two terms as mutually exclusive.

The complainant, A.J.H., was a member of the "family unit." She was a minor and lived at home before she reported the offense. We reject Hamacher's argument that the logic of the district court's order necessarily gives the complainant a veto over a stayed sentence; on the contrary, to refuse to give consideration to A.J.H.'s objection might well have the effect of banishing the victim from her home—a result we cannot believe to have been intended by the legislature. Although the term "family unit" may be applied differently in other fact situations, it would lead to an absurd result to define the term as excluding a resident minor complainant such as A.J.H. *See generally* Minn.Stat. § 645.17(1) (1992) (presumption that legislature does not intend an absurd result).

■ The state contends that the district court could not have stayed Hamacher's sentence without finding mitigating factors in addition to the statutory conditions. The state contends that a 1985 opinion construing the former intrafamilial sexual abuse statute is controlling. *See State v. Theisen,* 363 N.W.2d 867, 868–69 (Minn.App.1985) (to order stay in intrafamilial sexual abuse case, court must consider best interest of complainant or family and find substantial and compelling circumstances warranting departure), *pet. for rev. denied* (Minn. May 20, 1985). We disagree.

The former intrafamilial sexual abuse statute was similar to the current criminal sexual conduct statutes in providing that the court could order a stay "if it finds that a stay is in the best interest of the complainant or the family unit." Minn.Stat. § 609.3642, subd. 2 (1984) (repealed in 1985). Since *Theisen,* however, the statutory stay provision has been tightened to require that the defendant be both amenable to treatment and admitted into a treatment program. Minn.Stat. § 609.342, subd. 3(b). Amenability to treatment (or, more generally, to probation) is by itself a sufficient basis for a downward dispositional departure. *See, e.g., State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982) (numerous factors, including defendant's age and remorse, showed he was particularly amenable to treatment, thus supporting a dispositional departure). The statute therefore already contains the equivalent of a guidelines mitigating factor. It even goes further, requiring admission to a treatment program.

Moreover, since *Theisen,* several statutory sentence enhancement factors have been created, which either explicitly or implicitly serve as guidelines aggravating factors. *See, e.g.* Minn.Stat. 609.152, subds. 2, 3 (1992) (authorizing "aggravated durational departure" for dangerous offenders and career offenders); *cf.* Minn.Stat. § 609.1352, subd. 4

(1992) (sentence imposed under the patterned sex offender statute "is a departure from the sentencing guidelines"); *see also State v. Rachuy,* 502 N.W.2d 51, 52 (Minn. 1992) (career offender statute is a legislatively created ground for departure).

The stay provision in Minn.Stat. § 609.342, subd. 3, is a statutory mitigation factor sufficient to support a guidelines departure, in the same manner the statutory enhancement factors support upward departures.

### DECISION

Hamacher was not entitled to withdraw his guilty plea. It was not an abuse of discretion for the district court to refuse to stay execution of imposition of sentence.

**Affirmed.**