*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0163**

State of Minnesota,
Respondent,

vs.

Jermale Jermar Kling,
Appellant.

**Filed December 22, 2014
Reversed and remanded
Hooten, Judge
Concurring in part, dissenting in part, Johnson, Judge**

Rice County District Court
File No. 66-CR-13-1819

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Paul Beaumaster, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Johnson, Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant pleaded guilty to a charge of felony domestic assault and was sentenced to 27 months of incarceration. On appeal, appellant argues that he is entitled to modification of his sentence or withdrawal of his guilty plea because his plea was induced by a promise that his sentence would only be 23 months. We reverse and remand.

## FACTS

In July 2013, respondent State of Minnesota charged appellant Jermale Jermar Kling in Rice County with domestic assault by strangulation, felony domestic assault, obstructing legal process with force, and disorderly conduct. Defense counsel negotiated a plea agreement with the prosecutor to resolve this case and another matter pending in Rice County. A written "Amended Settlement Offer," dated September 19, 2013, provided:

> The [s]tate offers the following settlement negotiation:
> In exchange for [Kling's] plea of guilty to [felony domestic assault] in [f]ile 66-CR-13-1819, the [s]tate agrees to do the following:
> (1) Dismiss the remaining counts in [f]ile 66-CR-13-1819[;]
> (2) Dismiss [f]ile 66-CR-13-1975 in its entirety[;]
> (3) *Recommend a bottom-of-the-box disposition for sentencing*.

(Emphasis added.) Item 20(a) of the rule 15 plea petition states, "I have been told by my attorney and understand . . . that my attorney and the prosecuting attorney agreed that if I entered a plea of guilty, the prosecutor will do the following:" after which the following

2

hand-written entry is made: "See 9-19-13 settlement offer letter," which refers to the amended settlement offer. *See* Minn. R. Crim. P. 15.

On the same day, at the beginning of a plea hearing, defense counsel explained the plea agreement to the district court:

> DEFENSE COUNSEL: [W]e do have an agreement which involves the dismissal of file . . . [66-CR-13-1975,] and he'll plead on . . . [file 66-CR-13-1819] on . . . [c]ount 2, which is the [felony] domestic assault, and the other charges will be dismissed, and *the agreement is that it would be at the low end of the box*.
> DISTRICT COURT: Is this a correct statement of the plea agreement[?]
> PROSECUTOR: It is, your [h]onor . . . . [Defense counsel] and I spoke today, and the agreement now is that we would just have the Rice County files. *It will be bottom of the box*.
> . . . .
> DISTRICT COURT: Okay. Mr. Kling, you have heard what the lawyers have told me about this plea agreement. Is this your understanding of the plea agreement?
> KLING: Yes.

(Emphasis added.) Kling indicated that he had not yet signed the plea petition, but stated that he would "review that and sign it." Kling then waived his trial rights and proffered his guilty plea for the felony domestic assault charge, and the district court established a factual basis. The district court accepted the plea and scheduled a sentencing hearing. At the end of the plea hearing, defense counsel indicated that he would attach the amended settlement offer to the now-signed plea petition:

> DEFENSE COUNSEL: And the only other thing I have is the petition, your [h]onor[.] [T]his agreement came up rather suddenly, and I've prepared it myself, and what I had intended to do is attach the amended settlement [offer], but it's not been attached yet . . . .

3

> DISTRICT COURT: Well, you know, attach it. They'll take the staples out downstairs and scan it, but that way they know *it's a document that belongs together*.

(Emphasis added.) Kling then acknowledged that he had read and understood the plea petition. At no point during the plea hearing did the prosecutor clarify that the plea agreement contained a recommended sentence, rather than an agreed-upon sentence.

The sentencing hearing took place on November 1, 2013. During the hearing, the prosecutor stated that "the *recommendation* was for the low end of the guidelines range, and . . . I would ask the [c]ourt to follow that *recommendation*. . . . I would request that the [c]ourt honor the plea agreement and the sentencing guidelines and commit the defendant to the [c]ommissioner of [c]orrections for 23 months." (Emphasis added.) Defense counsel then stated, "[W]e're asking the [c]ourt to follow the plea agreement. Twenty-three months is what he should get . . . ." The district court then addressed Kling:

> The question before the [c]ourt today is really how long you should go to the [c]ommissioner of [c]orrections. There's *a joint recommendation for the low end of the box*, which is 23 months
>
> . . . .
>
> This lengthy history [of domestic-related offenses against the same victim] does not give the [c]ourt a reason to incarcerate you at the lower range of the presumptive box. Therefore, I am going to . . . commit you to the [c]ommissioner of [c]orrections for a period of 27 months.

4

(Emphasis added.)  At no point during the sentencing hearing did defense counsel clarify that the plea agreement contained an agreed-upon sentence, rather than a recommended sentence.

Kling subsequently appealed his judgment of conviction directly to this court, seeking to withdraw his guilty plea or to have his sentence modified to 23 months.  He argues that "[t]he district court misinterpreted the plea agreement as 'a joint recommendation'" as to sentence, rather than an agreed-upon sentence, and therefore "sentenced [him] to a prison term that was inconsistent with what he agreed to."

## DECISION

## I.

The state argues that because Kling has not petitioned the district court for post-conviction relief, his appeal is premature and should be dismissed.  In *State v. Anyanwu*, we observed that "a defendant who challenges a judgment of conviction against him based on an invalid guilty plea may seek a post-conviction hearing from the district court or may appeal directly to [the Minnesota Court of Appeals]."  681 N.W.2d 411, 413 n.1 (Minn. App. 2004).  We then clarified:

> Post-conviction proceedings are the proper forum for presentation and evaluation of matters not of record supporting withdrawal of a guilty plea. *But a direct appeal is appropriate when the record contains factual support for the defendant's claim and when no disputes of material fact must be resolved to evaluate the claim on the merits.*

*Id.* (quotations and citations omitted) (emphasis added).

5

Here, there is a discrepancy in the record as to the sentencing term of the plea agreement. According to the state, Kling pleaded guilty in exchange for a *joint recommendation* of a bottom-of-the-box sentence. According to Kling, he pleaded guilty in exchange for an *agreed-upon* bottom-of-the-box sentence. To determine the sentencing term of Kling's plea agreement, we must examine the record on appeal. "The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R. Crim. P. 28.02, subd. 8; *see* Minn. R. Civ. App. P. 110.01 ("The documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *State v. Propotnik*, 216 N.W.2d 637, 637–38 (Minn. 1974) (upholding defendant's guilty plea because, even though defendant was not orally informed during the plea hearing of his right to confront witnesses, "the record includes a copy of the petition to enter a plea of guilty which defendant had signed and which he admitted reading and understanding," and which informed defendant of this right); *State v. Bishop*, 545 N.W.2d 689, 691–92 (Minn. App. 1996) ("[I]n determining whether the offenses in this case arose out of the same behavioral incident, . . . the [district] court properly viewed the entire record, including the [r]ule 15 plea petition and the transcript of the plea hearing, to determine whether [defendant's] two offenses were separate and distinct.").[1]

---

[1] The dissent contends that "the parties' dispute should be resolved by referring [only] to the transcript of the plea hearing," not to Kling's signed plea petition that was received into evidence at the plea hearing. The dissent cites Minn. R. Crim. P. 15.09 in support of this proposition. But, rule 15.09 simply requires "a verbatim record of the proceedings" to be made during a felony plea hearing. This requirement is not unique to plea hearings. *E.g.*, Minn. R. Crim. P. 19.06 ("A verbatim record must be made at the defendant's initial

Here, the record on appeal includes the signed plea petition, the transcript of the plea hearing, and the transcript of the sentencing hearing. Kling's signed plea petition is part of the record because, at the plea hearing, the petition was received into evidence as an exhibit when the district court indicated it would be scanned into the record. *See State v. Kealy*, 319 N.W.2d 25, 26 (Minn. 1982) ("Defendant entered his plea pursuant to the petition, *which the [district] court received . . . .*") (emphasis added); *see also Perkins v. State*, 559 N.W.2d 678, 686 (Minn. 1997) ("[T]he plea petition form contained in Appendix A to rule 15 . . . ostensibly applies to felony offenses.").

The record on appeal is materially inconsistent as to the plea agreement's sentencing term. The signed plea petition plainly states that the state agreed to "[r]ecommend" a bottom-of-the-box sentence. But, the plea-hearing transcript plainly indicates that the state and Kling agreed that "the agreement" was for a bottom-of-the-box sentence. Moreover, the sentencing transcript indicates that there was a "joint recommendation" for a bottom-of-the-box sentence. Here, whether Kling's plea agreement included a recommended sentence or an agreed-upon sentence was material to his plea and affected whether he would be able to withdraw his plea if the district court did not sentence him in accordance with the agreement. *See Perkins*, 559 N.W.2d at 687

---

appearance, arraignment, and [o]mnibus [h]earing."). Rule 15.09 does not support the dissent's view that the plea-hearing transcript is the only record evidence that an appellate court can use to ascertain the terms of a plea agreement; i.e., that the plea-hearing transcript is the extent of the record on appeal. The dissent seems to equate the "record" of a plea hearing with the "record on appeal," but an examination of rule 15.09 and rule 28.02, subdivision 8, forecloses this reading. Rule 28.02, subdivision 8—not rule 15.09—defines the record on appeal and is the controlling rule here. *See State v. Brown*, 709 N.W.2d 313, 319–20 (Minn. App. 2006).

(holding that a defendant may withdraw his guilty plea if the district court rejects an agreed-upon sentence, but usually may not withdraw his guilty plea if the district court rejects a jointly recommended sentence).

In this unusual case, where the material inconsistency in the record is plain and undisputed, there are "no disputes of material fact [that] must be resolved to evaluate the claim on the merits." *Anyanwu*, 681 N.W.2d at 413 n.1. It is therefore unnecessary to have a postconviction hearing to determine whether Kling's plea is accurate, voluntary, and intelligent. As discussed in the next section, the material inconsistency in the record of Kling's plea agreement renders his guilty plea invalid as a matter of law. No amount of additional fact-finding during a post-conviction hearing could resolve the material conflict that already exists in the record on appeal. Therefore, Kling's direct appeal is not premature.

## II.

Kling argues that he should be allowed to withdraw his guilty plea.[2] A defendant does not have an absolute right to withdraw a guilty plea. *Perkins*, 559 N.W.2d at 685. A defendant may withdraw a guilty plea at any time, however, if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn.

---

[2] In the alternative, Kling asks for modification of his sentence from 27 months to 23 months in accordance with an alleged agreed-upon sentence. Because we conclude that there was no agreed-upon sentence, specific performance is not an available remedy. At oral argument, Kling's counsel conceded that specific performance is not appropriate if there was no agreement for a 23-month sentence.

8

2010). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.*

> The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial. The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements; and the intelligent requirement insures that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty.

*Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Aug. 11, 2009). "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. The validity of a plea is a question of law that we review de novo. *Id.* We conclude that Kling's guilty plea is involuntary and unintelligent, and therefore it is invalid.

"To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Id.* at 96. Here, the parties could not have reasonably understood the terms of the plea agreement because the record contains materially conflicting evidence as to whether the plea agreement contained a joint recommendation as to a sentence or an agreed-upon sentence. The amended settlement offer, as incorporated into Kling's signed plea petition, contemplated a joint recommendation; the parties' oral statements at the plea hearing contemplated an agreed-upon sentence; and other conflicting evidence exists in the record on appeal. *See* Minn. R. Crim. P. 28.02, subd. 8 (defining "[t]he record on appeal"); *Bishop*, 545 N.W.2d at 692 (observing that "the entire record" includes "the [r]ule 15 petition and the transcript

of the plea hearing").[3]  Because Kling's plea agreement is ambiguous and cannot be reasonably understood, his plea is involuntary.

---

[3] The dissent cites *In re Ashman* for the proposition that a signed plea petition is not part of the record on appeal and can never be used to contradict a plea-hearing transcript.  608 N.W.2d 853 (Minn. 2000).  In that case, Ashman pleaded guilty to fourth-degree criminal sexual conduct, and he had previously been convicted of other sex offenses.  *Id.* at 855–56.  The plea agreement, as stated orally at the plea hearing, contemplated that the state would not file a civil-commitment petition against Ashman *at the time of sentencing*, but left open the possibility that the state could file a petition at a later date.  *See id.* at 856.  Ashman's rule 15 plea petition was less detailed but was consistent with the plea-hearing transcript.  *See id.* at 855–56.  Nearly seven years later, shortly before Ashman's supervised-release date, the state filed a civil-commitment petition.  *Id.* at 856.  Ashman moved to dismiss the petition, alleging that, as part of the plea agreement, the state agreed to *never* file a commitment petition.  *Id.* at 856–57.  In support of the motion, Ashman's original defense counsel submitted an affidavit, and both Ashman and the defense counsel testified at a hearing.  *Id.* at 857.  The supreme court held that this after-the-fact testimony and evidence could not be used to contradict a term of the plea agreement that was "clearly expressed" at the plea hearing.  *Id.* at 858.  The supreme court did not discuss Ashman's plea petition in its analysis, probably because the plea petition was consistent with the transcript.  *See id.* at 855, 858–59.  *Ashman* simply does not support the dissent's argument that a plea petition can never be used on appeal to contradict a plea-hearing transcript.

The dissent also relies on *State v. Hamacher*, 511 N.W.2d 458 (Minn. App. 1994).  In *Hamacher*, this court examined Hamacher's plea petition as part of the record on appeal.  *See id.* at 460.  Hamacher argued that he should be allowed to withdraw his guilty plea because "he mistakenly believed he could withdraw the plea in the event the [district] court rejected a recommendation as to sentence."  *See id.*  This court characterized the plea petition as "more ambiguous" than the plea-hearing transcript, but a close reading of the *Hamacher* opinion—and a review of the appellate briefs—indicate that the terms of the plea agreement as stated in the plea petition were consistent with the terms as stated orally at the plea hearing.  *See id.* at 459–60.  Therefore, this court declined to "construe [the plea petition's] language as altering the agreement plainly stated in the record" and rejected Hamacher's claim.  *Id.* at 460.  The *Hamacher* court was not faced with a situation where a plea petition was materially inconsistent with a plea-hearing transcript, which we are faced with in this case.  Thus, *Hamacher* does not support the dissent's position that a plea petition is to be disregarded on appeal and can never be used to contradict a term of a plea agreement stated orally during a plea hearing.

We note that, under the dissent's view, none of the waivers or agreements contained in a plea petition would be valid unless they were read, verbatim, into the record at the plea hearing.  We know of no authority for such a rule, and such a rule

10

We also note that principles of contract law indicate that there was no agreement as to the sentencing term of Kling's plea agreement, and therefore Kling's guilty plea is involuntary. "In Minnesota plea agreements have been analogized to contracts and principles of contract law are applied to determine their terms." *Ashman*, 608 N.W.2d at 858. However, because "a defendant's liberty interests are implicated in a criminal proceeding, . . . we generally temper contract principles with safeguards to insure the defendant [receives] what is reasonably due in the circumstances, and in close cases, plea agreements should be construed to favor defendants." *Id.* (alteration in original) (quotations and citation omitted).

Due to the material conflict between the plea petition and the plea-hearing transcript, we conclude that there was no agreement as to the plea agreement's sentencing term and thus no mutual assent to an essential term of the plea agreement. *See SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011) ("Mutual assent entails a meeting of the minds concerning [a contract's] essential elements." (alteration in original) (quotation omitted)). Other record evidence—in particular, the sentencing transcript—bolsters our conclusion that there was no mutual assent here. The sentencing transcript is consistent with the plea petition but materially inconsistent with the plea-hearing transcript.

"The intelligence requirement ensures that a defendant understands . . . the consequences of his plea." *Raleigh*, 778 N.W.2d at 96. The consequences of a guilty

would surely prove to be unworkable in light of our state's crowded district court criminal calendars.

11

plea vary depending on whether it contains an agreed-upon sentence or a sentencing recommendation: "[I]f the sentencing court rejects an [agreed-upon sentence], the defendant is entitled to withdraw the guilty plea. . . .  If, conversely, the sentencing court rejects a mere" joint recommendation as to sentence, the defendant typically may not withdraw the plea.  *Perkins*, 559 N.W.2d at 687 (citations omitted).  As discussed above, the record on appeal is materially inconsistent regarding whether the plea agreement contained a promised 23-month sentence, or whether it contained an agreement by the state to recommend a 23-month sentence.  Accordingly, we conclude that Kling could not have understood the consequences of his plea, and his plea is unintelligent.

Because of the inconsistencies in the record, Kling's guilty plea was not voluntary or intelligent.  We therefore reverse and remand for the district court to allow Kling to withdraw his plea and for further proceedings consistent with this decision.

**Reversed and remanded.**

**JOHNSON**, Judge (concurring in part, dissenting in part)

I agree with the opinion of the court insofar as it concludes that reversible error occurred, but I respectfully disagree concerning the nature of the error and the appropriate appellate remedy. Therefore, I concur in part and dissent in part.

Kling argues that the district court erred by imposing a 27-month sentence because he and the state entered into a plea agreement that specified a 23-month sentence, the shortest sentence within the presumptive guidelines range. The central issue in this appeal is how this court should ascertain the terms of the plea agreement with respect to Kling's sentence.[1] In my view, the parties' dispute should be resolved by referring to the transcript of the plea hearing, which is the "verbatim record of the proceedings" and, thus, the official record[2] of the plea hearing. *See* Minn. R. Crim. P. 15.09. The transcript

---

[1]The issue to be decided in this appeal is framed by the facts of the case and the parties' dispute. The parties disagree about a term of their plea agreement. The transcript of the plea hearing supports Kling's position, and the plea petition supports the state's position. It is unnecessary in this appeal to consider any other issues concerning plea petitions. Specifically, this appeal may be resolved without invoking or disturbing the caselaw that relies on plea petitions for other purposes, such as to determine the validity of the plea itself. *See, e.g.*, *Perkins v. State*, 559 N.W.2d 678, 690 (Minn. 1997); *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983); *Oldenburg v. State*, 763 N.W.2d 655, 659-60 (Minn. App. 2009).

[2]Rule 15.09 uses the word "record" in its narrow sense by referring to "a transcript or report of proceedings," which is the "official copy of the recorded proceedings in a trial or hearing," *i.e.*, the definitive source for the statements that were made "on the record." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 757 (3d ed. 2011); *see also, e.g.*, *State v. Newcombe*, 412 N.W.2d 427, 429-31 (Minn. App. 1987), *review denied* (Minn. Nov. 13, 1987). Rule 15.09 does not use the word "record" in its broad sense by referring to "all documents filed with the clerk of the court" or "the papers that pertain to a lawsuit" and "are sent to an appellate court for review," *i.e.*, the documents or things that are "in the record." Garner, *supra*; *see also* Minn. R. Crim. P. 28.02, subd. 8; *e.g.*, *State v. Brown*, 709 N.W.2d 313, 319-20 (Minn. App. 2006).

of Kling's plea hearing unequivocally shows that his attorney and the prosecutor agreed to a 23-month sentence.

The state's contention that it agreed merely to *recommend* a 23-month sentence is based solely on the plea petition and an attachment to the plea petition. But those written materials cannot be used to contradict the transcript because the transcript is the official record of the plea hearing. This principle is illustrated by two opinions. In *In re Ashman*, 608 N.W.2d 853 (Minn. 2000), a respondent in a civil-commitment proceeding sought to prove that a prior plea agreement precluded the filing of a civil-commitment petition. *Id.* at 856-57. The respondent offered his own testimony about his understanding of the plea agreement and an affidavit of the attorney who represented him at the time of the plea agreement. *Id.* at 857. But the supreme court rejected his argument on the ground that "the terms of the plea agreement were clearly and unequivocally expressed" during the plea hearing, as reflected in "the plea hearing transcript." *Id.* at 858. The supreme court reasoned that the evidence that contradicted the transcript "does not create an ambiguity" and that its decision "need not be based on anything more than the record of the plea hearing." *Id.* at 859. Similarly, in *State v. Hamacher*, 511 N.W.2d 458 (Minn. App. 1994), the defendant relied on a plea petition in an attempt to establish an agreement concerning sentencing that apparently was contrary to a plea agreement that was "explained on the record at the guilty plea hearing." *Id.* at 460. But this court rejected

his argument and stated, "we cannot construe [the plea petition's] language as altering the agreement plainly stated in the record." *Id.*[3]

"It is well settled that an unqualified promise which is part of a plea arrangement must be honored . . . ." *Kochevar v. State*, 281 N.W.2d 680, 687 (Minn. 1979). As a general rule, if the state breaches a plea agreement, a defendant may be entitled to specific performance of the plea agreement or an opportunity to withdraw the plea. *See James v. State*, 699 N.W.2d 723, 728-29 (Minn. 2005); *State v. Jumping Eagle*, 620 N.W.2d 42, 43 (Minn. 2000); *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). Kling's primary request for appellate relief is specific performance; he seeks reversal of the 27-month sentence and a remand to the district court with instructions to impose the agreed-upon 23-month sentence. Kling's secondary, alternative request for appellate relief is reversal of the 27-month sentence and a remand to the district court with instructions to give him the choice of submitting to a 27-month sentence or withdrawing

---

[3] *State v. Bishop*, 545 N.W.2d 689 (Minn. App. 1996), is inapplicable because it is not concerned with ascertaining the terms of a plea agreement. *See id.* at 690-92. Rather, the question in *Bishop* was whether the district court violated section 609.035 of the Minnesota Statutes by imposing two sentences on two convictions for the same behavioral incident. *Id.* at 691. In analyzing the appellant's argument, this court referred to both the plea hearing and the plea petition, which were not inconsistent with each other. *Id.* at 692. Likewise, *State v. Propotnik*, 299 Minn. 56, 216 N.W.2d 637 (1974), is inapplicable because it also is not concerned with ascertaining the terms of a plea agreement. *See id.* at 57, 216 N.W.2d at 637. In fact, the *Propotnik* opinion has no bearing on rule 15.09 because the opinion was issued before the adoption of the rules of criminal procedure. *See In re Proposed Rules of Criminal Procedure*, No. 45517 (Minn. Feb. 26, 1975) (order).

his plea. It does not appear that Kling is making a tertiary request that this court invalidate his plea on appeal.[4]

Kling is correct in his primary argument that he is contractually entitled to a 23-month sentence. Furthermore, specific performance is the appropriate form of relief in light of the procedural history of this case. Because the district court accepted Kling's plea at the plea hearing, the district court accepted the plea on the terms stated during the plea hearing. *See* Minn. R. Crim. P. 14.02, subds. 1-2, 15.04, subd. 3. Having accepted Kling's plea at the plea hearing, the district court was not at liberty to either withdraw its acceptance or to reject the plea at the sentencing hearing. *See State v. Jefferies*, 806 N.W.2d 56, 63 (Minn. 2011). Accordingly, the district court was bound by the agreed-upon 23-month sentence. *See id.*; Minn. R. Crim. P. 15.04, subd. 3(1). Kling's preferred outcome is the imposition of a 23-month sentence, and he is entitled to it.

In sum, I would reverse the 27-month sentence and remand the matter to the district court for imposition of a 23-month sentence. I would not invalidate the guilty plea and would not allow the district court to consider the possibility of imposing a 27-month sentence.

---

[4]In the preliminary section of his appellate brief, Kling "requests that his sentence be modified in accord with the plea agreement, or in the alternative that he be allowed to withdraw his guilty plea." In the conclusion of his appellate brief, Kling urges "this Court [to] remand to the district court for imposition of a 23-month sentence, . . . in accord with the plea agreement, or in the alternative, to allow Kling an opportunity to withdraw his plea."