*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0912**

State of Minnesota,
Respondent,

vs.

Justin Lee Armstrong,
Appellant.

**Filed February 29, 2016
Reversed and remanded
Chutich, Judge**

Wilkin County District Court
File No. 84-CR-13-362

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Timothy E. J. Fox, Wilkin County Attorney, Breckenridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, F. Richard Gallo, Jr., Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and

Randall, Judge.\*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CHUTICH**, Judge

Appellant Justin Armstrong seeks to withdraw his guilty plea. He argues that the district court's decision to sentence him before resolution of a pending criminal case in North Dakota invalidated his plea. Because we conclude that the state made Armstrong a promise to have him sentenced after resolution of his other pending criminal cases, the promise induced him into taking the plea agreement, and the promise was not kept, we reverse and remand for withdrawal of his guilty plea.

## FACTS

In October 2013, appellant Justin Armstrong was charged with one count of second-degree possession of a controlled substance with the intent to sell and one count of obstruction of legal process. *See* Minn. Stat. §§ 152.022, subd. 1(1), 609.50, subd. 1(2) (2012). Armstrong signed a guilty-plea petition nearly a year later on May 5, 2014. In the petition he agreed to (1) plead guilty to an amended charge of third-degree possession of a controlled substance and (2) receive a sentence of 58 months in prison.

The plea hearing took place the next day. During the hearing, defense counsel informed the district court that the agreement was for an amended charge of third-degree possession of a controlled substance with an executed 58-month sentence, "and the procedure following that would be as we discussed in chambers to facilitate my client serving his time in North Dakota."

2

The district court clarified the details of the agreement with Armstrong,

> Q: Now it's my understanding that you have other matters presently pending, one in Crookston, Polk County here in Minnesota and the other in North Dakota.
> A: Yes.
> Q: And you understand that the proposal that the attorneys have presented to me is that I not accept your plea today and that I sentence you after everybody else has. Do you understand that?
> A: Yes, your Honor.
> . . . .
> Q: [A]re you in agreement that you would be sentenced in your absence [if you cannot be moved back to Minnesota for sentencing] after you've been convicted and sentenced in North Dakota?
> A: Get sentenced without my presence you mean?
> Q: Yes.
> A: Yes.

Armstrong then pleaded guilty, but the district court deferred acceptance of the plea. The district court told him to keep his attorney informed of "when everything is done in North Dakota because you don't want to delay getting this going."

Armstrong was next sentenced in the other Minnesota case out of Polk County. The Polk County District Court immediately executed his sentence. Consequently, Armstrong was in the state's custody until December 15, 2014. After being released, he started the pretrial proceedings in the North Dakota case. Eventually the Wilkin County District Court discovered that Armstrong was not in custody and issued a warrant for his arrest. It then held a sentencing hearing before the resolution of the North Dakota case.

Armstrong appeared in front of a different judge during the sentencing hearing. The sentencing judge cited the district court's bench notes from the plea hearing that stated Armstrong "wants to be sentenced after [he is] done in Crookston and North Dakota." The

3

sentencing judge—having not attended the plea hearing, reviewed a transcript of the plea hearing, or been privy to the off-the-record conversations—asked the two parties what their understanding of the agreement was about the timing of sentencing since it was not mentioned in the written plea petition.

Armstrong argued that the agreement was to sentence him "after matters were resolved in Polk County, Minnesota and Grand Forks, North Dakota." Armstrong's attorney contended that "a large [part] of what [Armstrong] considered the benefit of his bargain here was the sentencing order so that he could be serving his time in North Dakota." Armstrong himself said that "North Dakota is not going to come to Minnesota and get me until Minnesota is completely done," which meant that he would not receive any concurrent sentencing benefit. Thus, he argued, the district court should release him until the North Dakota case is resolved.

The state countered that the release of Armstrong from custody was never intended or anticipated and that Armstrong had agreed to go to North Dakota and plead guilty. It stated that by not pleading guilty, Armstrong did not keep his end of the bargain. The state requested that Armstrong "be sentenced today because there is no deadline or assurance that that will ever happen in North Dakota. They could dismiss the charges tomorrow. [The state does not] know what [North Dakota is] doing."

The district court acknowledged that the plea petition did not show whether the parties understood that Armstrong was immediately going to plead guilty in North Dakota or be released and allowed to handle the North Dakota case out of custody. The district court further stated that "we had not anticipated he would be out and about, rightly or

4

wrongly we hadn't anticipated that." And then the district court said that "it's not playing out as originally intended that much is clear. I'm going to sentence [Armstrong] today." The district court then sentenced Armstrong to 58 months in prison.

Armstrong appeals. The state filed a letter stating it would not be submitting a responsive brief.

## DECISION

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). But "a court must allow withdrawal of a guilty plea if withdrawal is necessary to correct a 'manifest injustice.'" *Id.* (quoting Minn. R. Crim. P. 15.05, subd. 1).

> A manifest injustice exists if a guilty plea is not valid. To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. A defendant bears the burden of showing his plea was invalid. Assessing the validity of a plea presents a question of law that we review de novo.

*Id.* at 94 (citations omitted).

"A guilty plea is involuntary when it rests 'in any significant degree' on an unfulfilled or unfulfillable promise[.]" *Uselman v. State*, 831 N.W.2d 690, 693 (Minn. App. 2013) (quoting *James v. State*, 699 N.W.2d 723, 728-29 (Minn. 2005)). The broken promise must be said "'to be part of the inducement or consideration'" for the plea agreement. *State v. Spaeth*, 552 N.W.2d 187, 194 (Minn. 1996) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971)).

We apply principles of contract interpretation to decide the scope of the promise that was made and whether that promise was broken. *Id.*; *see also State v. Brown*, 606

5

N.W.2d 670, 674 (Minn. 2000) ("In determining whether a plea agreement was violated, courts look to what the parties to the plea bargain reasonably understood to be the terms of the agreement." (quotations omitted)). But "[b]ecause of the constitutional implications involved in criminal proceedings, courts frequently temper contract principles with safeguards to insure the defendant [receives] what is reasonably due in the circumstances." *Spaeth*, 552 N.W.2d at 194 (quotation omitted). Thus, "in close cases, plea agreements should be construed to favor defendants." *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000).

We first determine whether the state promised Armstrong that he would not be sentenced until after the North Dakota case was resolved. According to the hearing transcript, the North Dakota case was initially discussed at the beginning of the plea hearing when Armstrong's attorney mentioned the procedure for his client serving time in North Dakota as being "discussed in chambers." After that, the district court continued to question Armstrong about the cases pending against him in Minnesota and North Dakota. Armstrong confirmed for the district court that the proposal was to not accept his plea on the day of the plea hearing and then sentence him after the other courts sentenced him. The district court informed Armstrong that his sentence would run concurrent to any sentence he received in North Dakota. It then deferred acceptance of the plea and told him to keep his attorney informed of "when everything is done in North Dakota."

The parties did not discuss on the record whether Armstrong could resolve the other cases outside of the state's custody. Nor did the parties state that the plea agreement depended upon Armstrong pleading guilty in North Dakota. These caveats, although

6

certainly plausible requirements of the guilty-plea agreement, were never placed on the record. Armstrong simply agreed to be sentenced after the two other matters were resolved, which gave him an anticipated benefit of receiving a sentence in Wilkin County that would run concurrently with time served in North Dakota on a North Dakota sentence, a benefit that he was otherwise not entitled to receive. *See State v. Jennings*, 448 N.W.2d 374, 375 (Minn. 1989) ("It is the second sentencing court which specifies whether the sentences run concurrently or consecutively.").

The terms of the agreement in the plea petition and in the plea-hearing record are clear and unambiguous about the timing of sentencing, and therefore we need not go beyond them to imply any additional terms or intent. *See Seagate Tech, LLC v. W. Digital Corp.*, 854 N.W.2d 750, 761 (Minn. 2014) (discussing this principle as one of contract law). Thus, we conclude that the parties' agreement was to sentence Armstrong in Wilkin County after his other cases were resolved.

Moreover, even if we concluded that the plea agreement is ambiguous, we must resolve any such ambiguities in favor of the defendant. *See Ashman*, 608 N.W.2d at 858. Accordingly, we believe it inappropriate to infer, where the record is completely silent on these issues, that Armstrong promised to plead guilty in North Dakota and to remain in custody until that case was concluded.

We next decide whether the state's promise induced Armstrong to accept the plea agreement. The timing of sentencing and its concurrent nature were the only terms that were added during the plea hearing to the terms in the plea petition. And the timing of sentencing was mentioned several times during the plea hearing. During sentencing,

7

Armstrong contended that the timing was the only reason that he agreed to the terms. He wanted to serve time in North Dakota instead of Minnesota; if his Minnesota sentence was executed before he resolved the North Dakota case, however, he would not receive his bargained-for benefit of serving a concurrent sentence in North Dakota. On this record, we conclude that the promise to delay sentencing until after the North Dakota case was concluded induced Armstrong into taking the plea agreement.

Finally, we decide if the promise was upheld. The promise was broken when the district court sentenced Armstrong before the resolution of the North Dakota case. We therefore conclude that Armstrong's guilty plea was involuntary and withdrawal of the guilty plea is necessary to correct a manifest injustice. We reverse the conviction and remand for withdrawal of the guilty plea.

**Reversed and remanded.**