*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0881**

State of Minnesota,
Respondent,

vs.

Michael Lamontice Smith,
Appellant.

**Filed September 2, 2025
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-24-657

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicholas G. Kimball, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

Michael Lamontice Smith pleaded guilty to one count of a two-count complaint pursuant to a plea agreement in which the state agreed to dismiss the other count. After he was sentenced to prison, Smith petitioned for postconviction relief, seeking an order that

would require the state to file an amended complaint that does not include the dismissed count and does not include the factual allegations on which the dismissed count was based. The postconviction court denied the petition on the ground that there is no legal authority for the relief Smith seeks. We affirm.

**FACTS**

In January 2024, the state charged Smith with possession of ammunition by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2) (2024), and felony domestic assault, in violation of Minn. Stat. § 609.2242, subd. 4 (2024). In the statement of probable cause, the complaint alleged that police officers responded to a report of a domestic dispute at an apartment in Minneapolis. The complaint further alleged that, while in the apartment, officers found live ammunition, a loaded handgun magazine, and a pistol.

In February 2024, Smith and the state entered into a plea agreement. Smith agreed to plead guilty to count 1, the possession-of-ammunition charge, and the state agreed to dismiss count 2, the domestic-assault charge; dismiss a case pending in a different county; and not charge Smith with any violations of a domestic-abuse no-contact order (DANCO). The parties also agreed on a 60-month prison sentence.

At the outset of the plea hearing, the district court asked Smith's attorney to place the plea agreement on the record. Smith's attorney stated: "The agreement calls for Mr. Smith to plead guilty to count 1, dismiss count 2. Sixty-month commit to the DOC. Agreement with Anoka County to dismiss 02-CR-22-1594 and the state agrees to not charge any V-DANCOs . . . , if any, up to today . . . ." When the district court asked the prosecutor whether he wished to add anything, he stated, "the only thing I would want to

add is even though he's not pleading to the domestic in the case, we would leave it open if the victim wants to provide a victim impact statement at sentencing next week." The district court then addressed Smith by saying: "Mr. Smith, you just heard the attorneys tell me about the plea agreement you've reached. Is that your understanding of the plea agreement?" Smith responded: "My understanding, the domestic and the DANCO would be dismissed and I'm pleading to just the magazine, not the gun, for a 60-month commit." At the conclusion of the hearing, the district court accepted the plea.

In March 2024, Smith appeared for sentencing. Consistent with the plea agreement, the district court adjudicated Smith guilty of possession of ammunition by an ineligible person, dismissed the domestic-assault charge, and imposed an executed sentence of 60 months of imprisonment.

In June 2024, Smith filed a notice of appeal from the judgment of conviction. In October 2024, he filed a motion to stay the appeal and remand for postconviction proceedings, and this court granted the motion. *See* Minn. R. Crim. P. 28.02, subd. 4(4).

Later that month, Smith filed a postconviction petition and an accompanying affidavit. In the affidavit, he stated, with reference to the attorney who represented him in the district court:

> [He] told me that, under the agreement, the state would issue an amended complaint, in writing. He said the amended complaint would only have one count, the firearm charge. He said the probable cause portion of the amended complaint would not have any reference to the assault that had been charged.

In Smith's petition, he alleged that he entered into the plea agreement because he "believed an amended complaint, in writing, would be filed by the state after the hearing" and "believed all references to the assault charge would be absent in the amended complaint." He also alleged that "an amended complaint was important . . . because he knew that the domestic allegations in the original complaint would affect aspects of the prison sentence he was agreeing to serve." He acknowledged that "the on-the-record transcript of his plea hearing does not reflect this part of the agreement" but reiterated that "his attorney for the plea made the promise to him" and he "believed at the time that it was made a part of the record." The petition further stated that Smith "does not seek to withdraw his plea" but, rather, "seeks to enforce it."

In response, the state filed a two-page letter in which it urged the postconviction court to deny Smith's petition on the ground that he did not allege facts that would entitle him to postconviction relief. Smith's attorney filed a two-page letter in reply. In January 2025, the postconviction court filed an order denying Smith's petition. Smith appeals.

**DECISION**

Smith argues that the postconviction court erred by denying his postconviction petition without an evidentiary hearing. He contends that the state did not fulfill a promise that induced his guilty plea, namely, a promise to file an amended complaint that does not include a charge of felony domestic assault and does not allege facts that would support a domestic-assault charge.

Smith cites *Santobello v. New York*, 404 U.S. 257 (1971). In that case, the defendant pleaded guilty to a lesser-included offense pursuant to a plea agreement. *Id.* at 258. At the

4

time of the plea, the state "agreed to make no recommendation as to the sentence." *Id.* At the time of sentencing, however, the state recommended a sentence of one year. *Id.* at 259. The trial court imposed a one-year sentence. *Id.* at 259-60. On appeal, the United States Supreme Court concluded that the state breached a bargained-for promise and remanded the case to the trial court with instructions to determine, in its discretion, whether to order specific performance or to allow the defendant to withdraw his guilty plea. *Id.* at 262-63.

Minnesota appellate courts have applied *Santobello* in similar situations. In *Kochevar v. State*, 281 N.W.2d 680 (Minn. 1979), the supreme court stated, "It is well settled that an unqualified promise which is part of a plea arrangement must be honored or else the guilty plea may be withdrawn." *Id.* at 687 (citing *Santobello*, 404 U.S. 257). The supreme court later summarized the law by stating that, if a guilty plea "'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quoting *Santobello*, 404 U.S. at 262). The supreme court also has described the potential remedies: "On demonstration that a plea agreement has been breached, the court may allow withdrawal of the plea, order specific performance, or alter the sentence if appropriate." *Id.*

If a postconviction petitioner seeks to prove a breach of a plea agreement, "courts look to what the parties to [the] plea bargain reasonably understood to be the terms of the agreement." *Id.* (quotation omitted). In determining the terms of a plea agreement, contract principles apply. *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000). If a plea agreement

5

"is not susceptible to more than one construction," it is deemed to be unambiguous. *Id.* at 858. Whether a plea agreement is ambiguous or unambiguous is a question of law. *See id.*

In *Ashman*, the defendant pleaded guilty to a criminal-sexual-conduct charge pursuant to an agreement "that the court at the time of sentencing would not refer this matter for the possibility of judicial commitment." *Id.* at 854. Seven years later, shortly before Ashman was released from prison, the department of corrections prepared a petition to have him civilly committed as a sexual psychopathic personality and a sexually dangerous person, and the county attorney filed the petition. *Id.* at 856. Ashman moved to dismiss the petition on the ground that, at the time of his guilty plea, the state had promised to never seek his civil commitment. *Id.* at 856-57.

On appeal, the supreme court resolved Ashman's argument with the following reasoning:

> [W]e believe the terms of the plea agreement were clearly and unequivocally expressed when [at the plea hearing] appellant's attorney presented them to the district court, the county attorney and appellant acknowledged them, and the district court approved them. In the plea hearing transcript appellant's attorney recited that the plea agreement was that "at the time of sentencing" appellant would not be referred for civil commitment. As the plea agreement was clearly expressed by appellant's attorney and confirmed by appellant to represent the plea, the fact that appellant, while in prison, claimed the agreement to be something else—that it barred the state from petitioning for the civil commitment absent future sexual misconduct—or the fact that appellant's attorney later made the same claim does not create an ambiguity. The terms of the plea are not susceptible to more than one meaning. An after-the-fact assertion that the terms were different does not render ambiguous that which was clear and unequivocal when the agreement was made.

*Id.* at 858-59. The supreme court added that "our ruling need not be based on anything more than the record of the plea proceeding." *Id.* at 859. The *Ashman* opinion demonstrates that, in determining whether the state breached a plea agreement, a court should discern the terms of the plea agreement according to the statements made during the plea hearing and, if those terms are unambiguous, should not consider statements allegedly made outside of the plea hearing. *See id.* at 858-59.

In this case, the plea agreement was expressly stated on the record at Smith's plea hearing by his attorney and the prosecutor. Neither attorney said that the state had agreed to file an amended complaint. Smith personally confirmed that his attorney and the prosecutor had accurately recited the plea agreement. Thus, the record of the plea hearing makes clear that the plea agreement did not include a promise by the state to file an amended complaint. Given the reasoning of *Ashman*, we conclude that the parties' plea agreement is unambiguous and that the state did not promise to file an amended complaint.

Smith's argument for reversal is based on his sworn statement that his district-court attorney told him that the state would file an amended complaint, that the amended complaint would allege only the ammunition-possession charge, and that the statement of probable cause would be revised to not state facts that would support a domestic-assault charge. In effect, Smith bases his argument on promises made *by his own attorney*, not by the state. But the supreme court has stated that a postconviction petitioner may enforce a plea agreement only if there has been a breach of "a promise or agreement *of the prosecutor*." *Brown*, 606 N.W.2d at 674 (emphasis added). Furthermore, the supreme court has stated, "While the government must be held to the promises it made, it will not

be bound to those it did not make." *Id.* (quotation omitted). Smith does not cite any authority that would allow him to obtain the postconviction relief he requests based solely on evidence of promises made by his own attorney.

Thus, Smith has not alleged facts that, if proved, would allow him to obtain postconviction relief. Because "the files and records of the proceeding conclusively show that the petitioner is entitled to no relief," the postconviction court did not err by denying Smith's petition without an evidentiary hearing. *See* Minn. Stat. § 590.04, subd. 1 (2024).

**Affirmed.**